DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 4:01 CR 321 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| Herman Garner, III, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

I. Introduction

The defendant, Herman Garner, III, was indicted on July 5, 2001, for conspiring to distribute and possess with the intent to distribute in excess of 500 grams of cocaine. He was also charged with possession of a firearm as a convicted felon. On November 2, 2001, the defendant was found guilty by a jury of both counts and sentenced on December 20, 2001, to a term of 120 months. The defendant then appealed his conviction and sentence which was subsequently affirmed. See *United States v. Forest,* 355 F3d. 942 (6th Cir. 2004). In sentencing Garner, the Court found that the amount of the cocaine attributable to Garner was between 2 and 3.5 kilograms. Garner challenged that finding contending that this Court should have attributed to him an indeterminate amount of cocaine which would have reduced his offense level from 28 to 12.[1]

---

[1] This Court, as indicated at page 956 in the Forest opinion, relied on the following evidence to support the finding from 2 to 3.5 kilograms:

(1) Intercepted cell phone conversations revealed that Garner was involved in

(continued...)

(4:01 CR 321)

The Sixth Circuit ruled that the Court's recitation of the evidence as set forth in footnote one (1): "demonstrates that Garner had previously participated in the distribution of multiple kilograms of cocaine, that Forest and Garner participated in a joint effort to distribute two kilograms of cocaine to the DEA informant, and that they jointly transported three kilograms of cocaine in Garner's car on May 31, 2001.  Attributing at least two kilograms of cocaine to Garner for the purposes of sentencing was therefore not clearly erroneous."

Garner then filed a petition for certiorari with the Supreme Court.  That court then remanded to the Sixth Circuit this case for further consideration in view of its recent decision in *United States v.*

---

[1](...continued)
drug trafficking along with Forest;

(2) Garner's conversations demonstrated that he acted as a broker between Forest and potential customers in one-kilogram cocaine transactions;

(3) In mid-May of 2001, a DEA informant ordered two kilograms of cocaine from Garner who then communicated the order to Forest;

(4) On May 31, 2005, DEA agents observed Forest and Garner together for most of the day.  Later that day Forest and Garner drove (in Garner's car) to pick up the drug couriers in Cleveland and transport them back to the Youngstown/Warren area;

(5) The couriers testified that they had brought four packages to Ohio; two kilogram-sized packages and two smaller ones;

(6) On June 1, 2005, Garner met with Forest and the couriers, then accompanied Forest to an office-supply store, where Forest purchased a digital scale;

(7) At approximately 7:51 p.m. on June 1, 2001, Garner told Jeffrey Davis that the cocaine would be gone soon and that any deal would have to be consummated the next day.

2

(4:01 CR 321)

*Booker,* ____ U.S. ___, 125 S.Ct. 738 (2005). In turn, the Sixth Circuit remanded for re-sentencing this case.

## II. The Sentencing Regime Under 21 US.C. §841

The court finds a review of the sentencing regime set forth in 21 U.S.C. §841 for various quantities of cocaine attributable to a defendant found guilty of a cocaine violation is a valid starting point in the analysis of Garner's claims. Section 841(b)(1)(A) provides for a mandatory minimum sentence range of not less than 10 years to a maximum of life (absent death or serious bodily injury) when the quantity attributable to the defendant is 5 kilograms or more of cocaine. Section 841(b)(1)(B) provides for a mandatory minimum sentence of not less than five years to a maximum of 40 years when the quantity of cocaine is 500 grams or more of cocaine. Section 841(b)(1)(B) also provides for a mandatory minimum sentence of 10 years, when the quantity is 500 grams or more of cocaine, if the violation for which the defendant is being sentenced follows a prior conviction for a drug felony offense which has become final.

Section 841(b)(1)(C) addresses *sub silento*, the penalty when the quantity of cocaine attributable to the convicted defendant is less than 500 grams of cocaine and provides for a maximum sentence of 20 years unless death or serious bodily injury is involved. However, there is no provision in Section 841(b)(1)(C) for a mandatory minimum sentence where the amount of cocaine attributable to the defendant is less than 500 grams of cocaine.

(4:01 CR 321)

In this case, the Court found in a pre-*Booker* setting that the amount of cocaine attributable to Garner was more than 2 kilograms of cocaine, but less than 3.5 kilograms of cocaine. That finding, challenged by Garner on appeal, was affirmed. The guideline sentencing range was then calculated by the Court as 87 to 108 months. However, the Court sentenced Garner to the term of 120 months as dictated by three factors:

1. The amount of cocaine attributable to Garner exceeded 500 grams, as determined by the Court, but not the jury.

2. Garner had a prior felony conviction for a drug offense and the conviction had become final.

3. The provisions of Section 841(b)(1)(B) required a mandatory minimum sentence of 120 months even though the guideline calculation was only 87 to 108 months.

It is well established that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory *maximum* must be submitted do a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000).

The issue that emerges in this case is whether the "fact" (quantity of cocaine attributable to the defendant) must be submitted to the jury and proved beyond a reasonable doubt in a situation where the "fact" results in a mandatory minimum sentence which exceeds the range calculated by the court in the process of determining the post-*Booker* advisory guideline range.

### III.  Booker Analyzed

4

(4:01 CR 321)

Garner seizes on the concluding statement in Justice Stevens' opinion in *Booker* which attracted a majority vote, but became subject to the opinion of Justice Breyer on the issue of remedy.  Justice Stevens declared:

"Accordingly, we reaffirm our holding in *Apprendi:*  Any fact (other than a jury conviction) which is necessary to support a sentence <u>exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (Emphasis added).</u>

Justice Breyer's opinion converted the mandatory guideline system to an advisory system, and that change in the law presumably accounts for the  remands in this case, first by the Supreme Court and then the Sixth Circuit.

Thus, the Court understands the present argument advanced by Garner to be that this Court, under an advisory guideline sentencing regime has the authority, on remand to determine the advisory guideline offense level, but not the power for sentencing purposes, without a jury verdict on the amount attributable to Garner, to impose a sentence applying the 500 gram provisions of Section 841(b)(1)(B) to reach the mandatory minimun sentence of 120 months.  This anomaly arises because the quantity of cocaine driving the guideline range as determined by the Court, while appropriate under the teachings of Justice Breyer in *Booker,* is not supported by a jury verdict so as to support the higher and mandatory minimum sentence of 120 months.

The government maintains that *Booker* did not address the use of judge-found fact to increase the statutory mandatory minimum sentence.  However, the Court understands Garner's position to be

5

(4:01 CR 321)

that the concluding statement in the opinion of Justice Steven's opinion, does by inference, address and hold that a judge-found fact, without a jury finding or an admission by the defendant can not be used to increase the sentence to a statutory mandatory minimum sentence.

### IV.  Pre-*Booker* Jurisprudence.

The result in *Apprendi* left open the issue of whether its teachings applied to judicial findings, as opposed to jury findings, that resulted in the imposition of a mandatory *minimum* sentence, such as initially imposed in this case.  The Sixth Circuit applied the teachings of *Apprendi* to mandatory minimum sentences in *United States v. Flowal*, 234 F.3d 932 (6th Cir. 2000), *United States v. Ramirez,* 242 F.3d 348 (6th Cir. 2001) and *United States v. Strayhorn,* 250 F.3d 462 (6th Cir. 2001).  Then came the decision of the Supreme Court in *Harris v. United States,* 536 U.S. 545 (2002) which held, contrary to the Sixth Circuit teachings in *Flowal, Ramirez* and *Strayhorn*, that the constitutional rights established by *Apprendi* apply only to factors that extend a defendant's sentence beyond the statutory maximum and not to those factors that require the statutory mandatory minimum. The *Harris* decision then led to *United  States v. Leachman*, 309 F.3d 377 (6th Cir. 2002) which followed *Harris* and expressly overruled *Flowal, Ramirez,* and *Strayhorn* to the extent those decisions conflict with Harris.

At this point, the Court finds no assistance in the post-*Booker* jurisprudence on the issue that the Court believes is raised by Garner.  The claim advanced by Garner is that the sweeping language of Justice Stevens in his part of the *Booker* decision, by inference, reverses the teachings of *Harris* and also *Leachman.*

6

(4:01 CR 321)

## V.  The Ex Post Facto Argument

The Court summarizes the ex post facto argument advanced by Garner, acting in his pro se capacity, as follows:

A.  The conspiracy allegations in the indictment cover the period of the Fall of 2000 to June, 2001.

B.  The established law in the Sixth Circuit requiring a jury finding as to the amount of cocaine attributable to a specific defendant in order to impose a mandatory *minimum* sentence, as opposed to a sentence beyond the statutory *maximum* sentence as required by *Apprendi*, was set forth in *Flowal, Ramirez,* and *Strayhorn* and was in force in the Sixth Circuit until the *Leachman* decision was issued on October 9, 2002.

C.   Garner's trial concluded in November of 2001.

D.   Garner's jury was not directed to find an amount of cocaine attributable to Garner individually, only the amount attributable to the conspiracy.

E.   To apply the teachings of *Leachman* to Garner's sentence based on this court's finding as to amount of cocaine attriutable to Garner rather apply the established law under *Flowal, Ramirez* and *Strayhorn*  at the time of Garner's criminal conduct, constitutes an ex post facto revision of the procedures.

From time to time, the provisions of the United States Sentencing Guidelines are amended, sometimes to increase the severity of the offense level for the criminal conduct.   The Guidelines make clear that the Guidelines in effect at the time of the criminal conduct shall apply rather than the

7

(4:01 CR 321)

amendments in effect at the time of the sentence. Such a position is in recognition of ex post facto concerns where the conduct is viewed in a harsher light.

In the court's view the argument advanced by Garner is novel. Certainly, no action of the legislature is involved with respect to the issue of whether a jury must make a particularized finding to justify the imposition of a mandatory *minimum* sentence. The issue was an open question for the judiciary. As indicated by *Leachman* at page 381, the Sixth Circuit's stance as set forth in *Flowal,* et.seq. was contrary to the stance taken on the issue by every other circuit that had addressed the issue.

Garner relies on the following passage from *Lindsey v. Washington,* 301 U.S. 397, 400-401 (1937);

> The effect of the new statute is to make mandatory what was before only the maximum sentence. Under it the prisoners may be held to confinement during the entire fifteen year period. Even if they are admitted to parole, to which they become eligible after the expiration of the terms fixed by the board, they remain subject to its surveillance and the parole may, until the expiration of the fifteen years, be revoked at the discretion of the board or cancelled at the will of the governor. It is true that petitioners might have been sentenced to fifteen years under the old statute. But the *ex post facto* clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. <u>The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer.</u>

After considering Garner's argument, the Court declines to address the ex post facto claim now raised for the first time on the remand. First, the issue was not raised by Garner's direct appeal. Secondly, Garner did not object to the scope of the interrogatory submitted to the jury which found the

8

(4:01 CR 321)

amount of the cocaine involved in the conspiracy exceeded the minimum of cocaine necessary to impose the statutory *minimum* sentence as required by 28 U.S.C. §841 (b)(1)(B).   Third, the petition for certiorari and the supplemental petition did not raise the ex post facto issue.[2]   Fourth, the Sixth

---

[2]Garner, in his pro se capacity, stated four reasons for granting the writ as follows:

I. This court should grant certiorari because the Sixth Circit's decision that suppression is not an available remedy for the warrantless ues of a person's cellular phone as a tracking device conflicts with this court's decisions in United States v. Place, 462 U.S. 696 (1983) and United States v. Jacobsen, 466 .S. 109 (1984).  Moreover the question is exceptionally important because there are more than 100 million cellular phone users in the United States and the poential to abuse this recently developed technology involves the privacy concerns of the entire Nation

II. This court should grant certiorari because the Sixth Circuit's decision that Garner did not have a right to privacy in his cell-site data because it was a "proxy" for his visually observable location conflicts with this Honorable Courts decision in United States v. Jacobsen, 466 U.S. 109 (1984).  Moreover, the question is exceptionally important because there are more than 100 million cellular phone users in the United States and the potential to abuse this recently developed technology is an important privacy issue that effects the entire country.

III. This court should grant certiorari because the Sixth Circuit's decision that a co-defendant's self-inculpatory statement offered as exculpatory evidence by a defendant who claims that it was the maker of the statement, rather than he, who committed the crime in question is not admissable as evidence unless corroborating evidence presented at trial clearly indicates its trustworthiness - conflicts with the Due Process Clause and with this court's decision in Idaho v. Wright, 497 U.S. 805 (1990)

IV. This court should grant certiorari to resolve a conflict between the Circuits on whether or not the government is required to file an "Information" when it seeks to enhance a defendant's sentence for a prior drug conviction under Title 21 U.S.C. Section 851, or whether the statute is satisfied when the defendant is given "clear notice" in some other form.

In Garner's supplemental brief seeking a writ of certerari, he submitted a fifth question as follows:

V. Whether, in light of Blakely v. Washington, (No. 02-1632), a District Court Judge has the authority to increase a defendant's sentence over that which was reflected by the jury verdict alone, using a

(continued...)

(4:01 CR 321)

Circuit in *Forest* did address and affirm the court's finding that the amount of cocaine attributable to Garner did exceed 2 kilograms. Fifth, as indicated in Section VI, the Court has decided to follow the principles of lenity and sentence Garner within the advisory guideline range of 87 to 108 months, rather than impose the previously entered sentence of 120 months.

### VI. Lenity

This case is aberrational in several respects. First, the Court erred in failing to submit an interrogatory to the jury as to the amount of cocaine attributable to Garner. That mistake was a clear violation of the Sixth Circuit binding precedent in *Flowal, Ramieriz* and *Strayhorn*. Secondly, by the time of the appellate decision in Garner's case as set forth in *United States v. Forest,* 355 F3d. 942 (6th Cir. 2004), *Flowal*, et. al. no longer constituted binding precedent given the decisions in *Harris*, supra and *Leachman,* supra. Third, then came the sweeping language by Justice Stevens in the first part of the *Booker* decision, which read literally indicates that a jury finding was required by the Garner jury to justify the imposition of the challenged mandatory minimum sentence, now raised by Garner in light of Justice Stevens' declaration. Justice Stevens's sweeping language went unchallenged in the second half of the *Booker* decision with respect to whether a jury must make the requisite finding as to the amount of cocaine attributable to an individual defendant to justify the imposition of the mandatory minimum sentence in those situations, as in this case, where the amount of cocaine attributable to the defendant by the judge exceeds the quantity necessary to impose the mandatory minimum sentence of

---

[2](...continued)
preponderance of the evidence standard?

(4:01 CR 321)

120 months but provides for an advisory maximum guideline range which is less than the 120 months initially imposed in this case.

In the Court's view the principles of sentencing lenity should apply in this case. Normally, the principles apply where there are conflicting stances as to the interpretation of a statute and the court elects to choose the alternative that results in a lesser sentence. See e.g. *United States v. Thomas,* 211 F.3d 321-323 (6th Cir. 2000), *Mallett v. United States,* 334 F.3d 491, 501-02 (6th Cir. 2003).

In the Court's view, the only two sentencing alternatives facing the Court are the imposition of the mandatory minimun sentence of 120 months, as endorsed by the reasoning of *Harris,* supra, or because of the language in the *Booker* opinion written by Stevens, the imposition of a sentence beginning with the advisory guideline range of 87 to 108 months based on the Sixth Circuit approved calculation of the amount of cocaine attributable to Garner, as earlier found by the undersigned judge.

The Court elects to impose a sentence based on the advisory guideline calculation, subject to the provisions of 18 U.S.C. §3553(a) rather than the potentially harsher sentence of 120 months. The Court hereby schedules re-sentencing for September 8, 2005 at 4:30 p.m.[3]

IT IS SO ORDERED.

| August 31, 2005 | /s/ David D. Dowd, Jr. |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[3]The Court has previously granted Garner the opportunity to present another brief in support of his position. However, subsequently the Court received a letter from Garner (Doc. #269) expressing the belief he had made the arguments on which he relied and expressing his disappointment that the Court had not ruled at the sentencing hearing conducted on August 23, 2005. As a consequence, the Court will proceed to re-sentencing as set forth.

11